COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-024-CV

 

 

RAUL DURAN                                                                     APPELLANT

 

                                                   V.

 

FORT WORTH INDEPENDENT                                                   APPELLEE

SCHOOL
DISTRICT

 

                                              ------------

 

           FROM
THE 141ST DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Raul Duran appeals from a
summary judgment rendered for appellee Fort Worth Independent School District
(FWISD) on Duran=s
Whistleblower Act claim.  In six issues,
Duran complains that the trial court improperly granted summary judgment.  We affirm.








Duran sued FWISD, claiming
that it retaliated against him for reporting violations of law by refusing to
assign him to a position that he wanted and instead assigning him to a less
desirable one.  FWISD moved for summary
judgment on both traditional and no evidence grounds, and the trial court
granted summary judgment without specifying the ground or grounds relied
on.  We will, therefore, affirm the
summary judgment if any of the theories presented to the trial court and
preserved for our review are meritorious.[2]  








We turn first to FWISD=s traditional motion for summary judgment.  A defendant who conclusively negates at least
one essential element of a cause of action is entitled to summary judgment on that
claim.[3]  Once the defendant produces sufficient
evidence to establish the right to summary judgment, the burden shifts to the
plaintiff to come forward with competent controverting evidence raising a
genuine issue of material fact with regard to the element challenged by the
defendant.[4]  When reviewing a summary judgment, we take as
true all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant=s favor.[5]   

The Texas Whistleblower Act
provides that A[a] state or
local governmental entity may not suspend or terminate the employment of, or
take other adverse personnel action against, a public employee who in good
faith reports a violation of law by the employing governmental entity or
another public employee to an appropriate law enforcement authority.@[6]  One of FWISD=s grounds for traditional summary judgment was that Duran=s reassignment was a purely lateral transfer and not an Aadverse personnel action@ as a matter of law.   We agree.








APersonnel
action@ is defined in the Act as Aan action that affects a public employee=s compensation, promotion, demotion, transfer, work assignment, or
performance evaluation.@[7]  Although the Act does not
define Aadverse,@ the Texas
Supreme Court recently held that Aa personnel action is adverse within the meaning of the Whistleblower
Act if it would be likely to dissuade a reasonable, similarly situated worker
from making a report under the Act.@[8] 








In 2003, FWISD reorganized
its AImprovement of Discipline and Learning Environment Department@ where Duran, a long-time employee, was one of approximately forty Aprevention/intervention specialists.@  After the reorganization,
Duran=s position was split into two distinct positions: prevention education
specialist and intervention specialist. 
FWISD decided to require each new intervention specialist to be licensed
as either a chemical dependency counselor, professional counselor, or social
worker.[9]  Some of the former prevention/intervention
specialists held one of these licenses, but Duran did not.     FWISD structured the reorganization so that
none of the prevention/intervention specialists would lose their employment,
pay grade, or salary level.  It permitted
the former prevention/intervention specialists to indicate their preference
between the two new positions and implemented a one-time grandfathering process
by which unlicensed prevention/intervention specialists who desired to become
intervention specialists could interview for those positions not filled by the
licensed employees.  Duran was one of
nine unlicensed prevention/intervention specialists to interview for six
intervention specialist positions, but he did not score among the top six
candidates in the panel interview and was, therefore, assigned to be a
prevention education specialist. 

The duties of the two new
positions differed from each other, but each involved on a full-time basis some
of the duties previously assigned to the prevention/education specialists.  Intervention specialists are Atroubleshooters@ who work in
social and behavioral intervention at one or two secondary schools and interact
with students, parents, school psychologists, and teachers.  Prevention education specialists serve
kindergarten through twelfth grades at several schools (nine, in Duran=s case) by conducting classroom presentations from a set curriculum on
topics such as drugs and violence.








FWISD presented summary
judgment proof to establish that Duran=s reassignment to prevention education specialist was a lateral
transfer from the original position and was not an adverse personnel
action.  Charles Hoffman, FWISD=s executive director of student and social services, testified by
affidavit that the position of prevention education specialist was a lateral
reassignment from the original, combined position.  Hoffman and Leslie James, assistant
superintendent of special services, both testified that the two new positions
were lateral to each other and equal in compensation and stature.  Further, five of the licensed former
prevention/intervention specialists chose to become prevention education
specialists even though they could have qualified to be intervention
specialists without interviewing.  And
Duran admitted that his salary remained the same and that there was no
difference in pay or benefits between the intervention and prevention education
specialists.[10]

This evidence was sufficient
to establish FWISD=s right to
summary judgment.  Thus, the burden
shifted to Duran to bring forth Acompetent controverting evidence raising a genuine issue of material
fact@ with regard to the adverse personnel action element.[11]








Duran=s own assertions were the only summary judgment evidence indicating
that his assignment to be a prevention education specialist was an adverse
personnel action.  In his deposition and
original grievance, Duran claimed that the prevention education specialist
position was Aless
challenging@ than his
original position and there was Amore discretion@ and Aprestige@ in the
intervention specialist position.  He
further asserts that his assignment to prevention education specialist involved
Amore menial responsibilities@ and Aless
opportunity to promote@ than the
intervention specialist position.  Duran,
however, did not proffer the affidavit or deposition testimony of any witnesses
other than himself.








        Although a transfer or reassignment
without a cut in pay may be an adverse personnel action in appropriate
circumstances,[12]
an employee=s subjective
belief that retaliation has occurred is generally insufficient to raise a fact
issue.[13]  To constitute an adverse personnel action
under the Act, a Aplaintiff
must show that he has suffered some serious, objective, and tangible
harm as a result of his transfer. . . . [and] personal preferences and
subjective perceptions of the plaintiff are insufficient.@[14]  Further, Duran=s subjective beliefs do not bear on whether the transfer would be
likely to dissuade a reasonable, similarly situated worker from making a
report.[15]  Duran=s subjective assertions that his reassignment was an adverse personnel
action are, therefore, insufficient to raise a fact issue on the adverse
personnel action element.[16]








Duran also testified that two
co-workers, Petra Jimenez (an original co-complainant but not a party in the
trial court) and an unnamed male prevention education specialist, believed that
the prevention specialists had a lower status. Conclusory statements of others= beliefs, unsupported by facts, are not proper summary judgment proof.[17]
 This evidence, therefore, also does not
raise a genuine issue of material fact on the challenged element.

Duran further argues that
because the intervention specialist position had higher qualifications than the
prevention education specialist position, it was more prestigious.  The relevant comparison, however, when
determining whether Duran=s
reassignment was an adverse employment action, is the difference between Duran=s original position and the position to which he was reassigned.[18]  Duran does not argue, and we have found no
evidence in the record to suggest, that the new prevention education specialist
position required fewer qualifications than the original, combined position.








For all of these reasons, we hold that FWISD conclusively negated the
adverse personnel action element of Duran=s cause of action and the trial court properly granted summary
judgment.  Accordingly, we overrule Duran=s fourth issue, which is dispositive of the appeal, and affirm the
trial court=s judgment.[19]  

PER CURIAM

PANEL
A:  CAYCE, C.J.; LIVINGSTON and GARDNER,
JJ.

DELIVERED:  February 21, 2008

 











[1]See Tex. R. App. P. 47.4.





[2]See,
e.g., Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d
211, 216 (Tex. 2003).  





[3]IHS
Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason, 143
S.W.3d 794, 798 (Tex. 2004); see Tex.
R. Civ. P. 166a(b), (c).  





[4]Centeq
Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995).





[5]IHS
Cedars Treatment Ctr., 143 S.W.3d at 798.





[6]Tex. Gov=t Code Ann. '
554.002(a) (Vernon 2004).





[7]Id. '
554.001(3) (Vernon 2004). 





[8]Montgomery
County, Tex. v. Park, 51 Tex. Sup. Ct. J. 160, 2007 WL 4216605, at *2B3
(Tex. Nov. 30, 2007) (adopting with appropriate modifications the standard set
out in Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126
S. Ct. 2405, 2415 (2006)).





[9]In
his oral deposition, Duran agreed that it was appropriate for a division to be
made between the two positions and did not quarrel with the requirement that,
generally, intervention specialists should be licensed.





[10]In
his brief, Duran claims that while his salary remained the same, he Alost
certain financial benefits@ as a result of the
reassignment.  However, he cites no
evidence to support this proposition, and, in his deposition, he conceded that
there was no difference in benefits.





[11]Provident
Life & Accident Ins. Co., 128 S.W.3d at 216.





[12]See Montgomery
County, 2007 WL 4216605, at *3B4; Serna v. City of San
Antonio, 244 F.3d 479, 482 (5th Cir. 2001). 





[13]See, e.g.,
Breaux v. City of Garland, 205 F.3d 150, 160 (5th Cir. 2000); M.D.
Anderson Hosp. & Tumor Inst. v. Willrich, 28 S.W.3d 22, 25 (Tex. 2000);
Elgaghil v. Tarrant County Junior Coll., 45 S.W.3d 133, 141 (Tex. App.CFort
Worth 2000, pet. denied).





[14]Serna, 244
F.3d at 483.  The Serna court
defined Aadverse
personnel action@
under the Act by citing cases interpreting that element under a ' 1983
cause of action.  Id.  Because both Duran and FWISD urge us to
consider cases interpreting ' 1983, we may rely on Serna=s
holding despite the difference, if any, between the adverse personnel action
elements of the Whistleblower Act and ' 1983.  Id. 





[15]See
Montgomery County, 2007 WL 4216605, at *2B3.





[16]The cases
that Duran cites in support of his position that his reassignment was an
adverse personnel action are distinguishable. 
In City of Fort Worth v. Zimlich, the supreme court did not
address the issue of whether the plaintiff=s reassignment constituted an
adverse employment action.  29 S.W.3d 62,
69 (Tex. 2000).  Zimlich was also
decided under an earlier version of the Whistleblower Act that made any form of
discrimination actionable.  Id. at
67.  Further, the lower court=s
published opinion in Zimlich reveals that evidence showed that Aexperienced
employees regarded the post as humiliating work or as >punishment=
duty.@  City of Fort Worth v. Zimlich, 975
S.W.2d 399, 406 (Tex. App.CAustin 1998), rev=d in
part by 29 S.W.3d 62 (Tex. 2000).  In
three other cases that Duran relies on, objective evidenceCincluding
testimony from witnesses other than the plaintiffCdemonstrated
that the plaintiff=s
post-transfer position was objectively worse than his original position.  Click v. Copeland, 970 F.2d 106, 110 (5th
Cir. 1992); Allison v. Tarrant County, 92 F. Supp. 2d 601, 605 (N.D.
Tex. 2000); Tex. Dep=t of Mental Health &
Mental Retardation v. Rodriguez, 63 S.W.3d 475, 480B81
(Tex. App.CSan
Antonio 2001, pet. denied).  No such
evidence exists here.





[17]See
Purcell v. Bellinger, 940 S.W.2d 599, 602 (Tex. 1997).





[18]See,
e.g., Serna, 244 F.3d at 484B85. 





[19]See Tex. R. App. P. 47.1.